Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS SCARANTINO, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SILVER SPRING NETWORKS, INC., SCOTT A. LANG, MICHAEL BELL, LAURA D. TYSON, WARREN M. WEISS, THOMAS R. KUHN, RICHARD A. SIMONSON, JONATHAN SCHWARTZ, THOMAS H. WERNER, PETER VAN CAMP, ITRON, INC., and IVORY MERGER SUB, INC.,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on September 18, 2017 (the "Proposed Transaction"), pursuant to which Silver Spring Networks, Inc. ("Silver Spring" or the "Company") will be acquired by Itron, Inc. ("Parent") and its wholly-owned subsidiary, Ivory Merger Sub, Inc. ("Merger Sub," and together with Parent, "Itron").

2. On September 17, 2017, Silver Spring's Board of Directors (the "Board" or

1
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

"Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Itron. Pursuant to the terms of the Merger Agreement, if Silver Spring's shareholders approve the Proposed Transaction, they will be entitled to receive $16.25 in cash for each share of Silver Spring they own.

3. On November 2, 2017, defendants filed a preliminary proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Silver Spring common stock.

9. Defendant Silver Spring is a Delaware corporation and maintains its principal executive offices at 230 W. Tasman Drive, San Jose, CA 95134. Silver Spring's common stock

1  is traded on the NYSE under the ticker symbol "SSNI."

2  10.  Defendant Scott A. Lang ("Lang") is Chairman of the Board of Silver Spring.

3  11.  Defendant Michael Bell ("Bell") is a director, and the President and Chief Executive Officer ("CEO") of Silver Spring.

4  12.  Defendant Dr. Laura D. Tyson ("Tyson") is a director of Silver Spring.

5  13.  Defendant Warren M. Weiss ("Weiss") is a director of Silver Spring.

6  14.  Defendant Thomas R. Kuhn ("Kuhn") is a director of Silver Spring.

7  15.  Defendant Richard A. Simonson ("Simonson") is a director of Silver Spring.

8  16.  Defendant Jonathan Schwartz ("Schwartz") is a director of Silver Spring.

9  17.  Defendant Thomas H. Werner ("Werner") is a director of Silver Spring.

10  18.  Defendant Peter Van Camp ("Van Camp") is a director of Silver Spring.

11  19.  The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

12  20.  Defendant Parent is a Washington corporation and a party to the Merger Agreement.

13  21.  Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22.  Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Silver Spring (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.  This action is properly maintainable as a class action.

24.  The Class is so numerous that joinder of all members is impracticable.  As of October 27, 2017, there were approximately 54,142,118 shares of Silver Spring common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

3
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

29. Silver Spring has more than a decade of experience creating, building, and successfully deploying large scale networks and solutions enabling the Internet of Things ("IoT") for critical infrastructure. The IoT refers to a system where a diversity of physical devices has the capacity to communicate using internet technologies. The Company's first area of focus was in energy, creating a leading smart grid network platform by applying advanced networking technology and solutions to the power grid. Silver Spring broadened its focus beyond the smart grid to other utility networks including gas and water, other critical infrastructure such as street lights, which enable smarter and more efficient cities, and additional industrial verticals that

could benefit from its platform.

30. For the smart grid, Silver Spring provides a leading networking platform and solutions that enable utilities to transform the power grid infrastructure into the smart grid. The smart grid connects millions of devices that generate, control, monitor, and consume power, providing timely information and control to both utilities and consumers.

31. The Company's SilverLink Networking Platform provides customers the ability to communicate with devices connected to the power grid. Silver Spring originally designed and built its network from the ground up to enable customers to deploy large-scale networks for the power grid. The networking platform is comprised of Silver Spring's hardware such as access points and relays, its communications modules, its SilverLinkOS network operating software, and its GridScape management and security software.

32. The Company's SilverLink Data Platform is aimed at helping its customers use the data generated by devices on the network in order to provide insights for decision-making. The Company's application enablement solution ingests, organizes, and visualizes data from multiple internal and external systems to offer near real-time processing. The Company's SensorIQ solution allows one to convert physical devices on the grid into multiple software-defined sensors. These sensors can then deliver information to any application ("app") at the frequency and at the granularity that makes sense for that app. In addition to its internally-developed apps, Silver Spring's solution enables customers and partners to develop their own apps that can be showcased in the Silver Spring application catalogue.

33. The Company offers an array of solutions built upon its SilverLink Network and Data platforms, including advanced metering, distribution automation, demand-side management, street lights, and its wireless IPv6 network service for the IoT, Starfish. Silver Spring also offers a wide range of services related to the initial deployment and ongoing operation of its networking platform and solutions, including professional services, managed services and software-as-a-service ("SaaS"), and customer support.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

34.   Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35.   The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36.   The Proxy Statement omits material information regarding Silver Spring's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Evercore Group L.L.C. ("Evercore").

37.   The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.   With respect to Silver Spring's financial projections, the Proxy Statement discloses certain Silver Spring projections for non-GAAP (generally accepted accounting principles) metrics, including Billings, Non-GAAP Gross Profit, Non-GAAP Operating Income, Adjusted EBITDA, Non-GAAP Net Income, and Unlevered Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

39.   To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP.  Indeed,

defendants acknowledge in the Proxy Statement that:

> The non-GAAP metrics should not be considered in isolation from, are not a substitute for, and do not purport to be an alternative to, revenue, gross profit, operating income, operating expense, net income or any other performance measure derived in accordance with GAAP. These non-GAAP measures may be different from similarly titled non-GAAP measures used by other companies. In addition, these non-GAAP measures are not based on any comprehensive set of accounting rules or principles. Silver Spring believes that non-GAAP measures have limitations in that they do not reflect all of the amounts associated with its results of operations as determined in accordance with GAAP.

40. The disclosure of this information is particularly important because defendants failed to disclose any financial projections that comply with GAAP. As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

41. The Proxy Statement indicates that Evercore performed two Discounted Cash Flow ("DCF") Analyses; one using the perpetuity growth methodology, and the other using the terminal value multiple methodology. With respect to each of these analyses, the Proxy Statement fails to disclose the actual inputs and assumptions underlying the discount rate range of 11.5% to 15.5% selected and used by Evercore in its analyses.

42. With respect to Evercore's perpetuity growth methodology DCF analysis, the Proxy Statement fails to disclose Evercore's basis for selecting perpetuity growth rates of 3.0% to 5.0%, and the terminal exit multiples implied from Evercore's analysis.

43. With respect to Evercore's terminal value multiple methodology DCF analysis, the Proxy Statement fails to disclose the actual assumptions underlying Evercore's selection of the terminal multiple range of 8.0x to 14.0x (including, but not limited to, the Adjusted EBITDA multiples of the comparable companies observed by Evercore), and the perpetuity growth rates implied from Evercore's analysis.

44. Given the significant disparity in the implied values of the Company derived from each analysis ($3.22 to $6.42 for the perpetuity growth method, and $6.40 to $15.11 for the terminal value method), the full disclosure of the foregoing information is necessary so that

stockholders can assess the reliability of Evercore's analyses and make a fully informed vote on the Proposed Transaction.

45. With respect to Evercore's Illustrative Present Value of Future Share Price analysis, Evercore multiplied the Company's assumed price-to-earnings multiple to the Company's estimated fiscal year 2020 earnings per share ("EPS"), but the Proxy Statement fails to disclose any projections of the Company's projected earnings through 2020. Further, the Proxy Statement fails to disclose the actual inputs and assumptions underlying the discount rate of 13.5% selected and used by Evercore in its analysis.

46. With respect to Evercore's Peer Group Trading Multiples Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Evercore in its analysis.

47. With respect to Evercore's Analyst Price Targets Analysis, the Proxy Statement fails to disclose each of the individual price targets and research analysts observed by Evercore in its analysis.

48. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinion of Silver Spring's Financial Advisor;" and (ii) "Certain Prospective Financial Information Reviewed by the Silver Spring Board of Directors and Silver Spring's Financial Advisor."

49. The Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers.

50. The Proxy Statement states that:

> In connection with the execution of the merger agreement, Silver Spring entered into Cancellation and Stay Bonus Agreements (which we refer to as the "Stay Bonus Agreements") with Messrs. Bell, Arnold, Lang, Reeves and Vaswani and Ms. Stynes. Pursuant to the terms of the Stay Bonus Agreements, and in connection with each such executive's waiver of certain vesting and other provisions relating to the PSUs granted in 2015, each executive will become entitled to a cash retention award subject to such executive's continued employment by Silver Spring until the closing of the merger.

51.  The Proxy Statement, however, fails to disclose any information relating to the timing and substance of discussions regarding the Stay Bonus Agreements with these officers, including who proposed the retention payments and who participated in such conversations.

52.  Communications regarding retention payments during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53.  The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Silver Spring's Directors and Executive Officers in the Merger."

54.  The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Silver Spring's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Silver Spring**

55.  Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.  The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Silver Spring is liable as the issuer of these statements.

57.  The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

9
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

58. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

60. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Itron

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants and Itron acted as controlling persons of Silver Spring within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Silver Spring and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65. Each of the Individual Defendants and Itron was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause them to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

67. Itron also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

68. By virtue of the foregoing, the Individual Defendants and Itron violated Section 20(a) of the 1934 Act.

69. As set forth above, the Individual Defendants and Itron had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 20, 2017                    **WEISSLAW LLP**

By: _____
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

---

12
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934